The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>WALI MUJAHIDH,<br><br>　　　　　　　　Defendant. | NO. CR11-228JLR<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

### I.     Introduction.

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Todd Greenberg and Michael Dion, Assistant United States Attorneys, hereby files this Sentencing Memorandum regarding defendant Wali Mujahidh. For the reasons set forth herein, the government respectfully recommends that the Court sentence Mujahidh to a term of imprisonment of 18 years (216 months) and a term of supervised release of 10 years.

This lengthy sentence is warranted because Mujahidh agreed to participate in a horrific crime, with a terrorism motive, that would have killed scores of military officers and employees, high school age military recruits, and other victims. The evidence establishes that Mujahidh was enthusiastic about engaging in the attack and killing his intended victims, he was eager to die a martyr during the attack, and he took concrete steps to bring the attack to fruition, including traveling by bus from Los Angeles,

GOVERNMENT'S SENTENCING MEMORANDUM - 1
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

California to Seattle and taking possession of machineguns. Although the attack plot was originally Abdul-Latif's idea, Mujahidh is deserving of the same sentence because he was equally committed to executing the attack and killing a large number of innocent victims, and he poses at least as much of a danger to the community upon his release from prison.

## II. The Plea Agreement.

On December 8, 2011, Mujahidh entered guilty pleas to the offenses of *Conspiracy to Murder Officers and Employees of the United States*, in violation of Title 18, United States Code, Sections 1114(1) and 1117; *Conspiracy to Use Weapons of Mass Destruction*, in violation of Title 18, United States Code, Sections 2332a(a)(2)(C) and (a)(3); and *Unlawful Possession of a Firearm*, in violation of Title 18 United States Code, Section 922(g)(1).

The Plea Agreement contains the following statement of facts:

    a.    Beginning in or before May 2011, Defendant Walli Mujahidh agreed with Abu Khalid Abdul-Latif to kill United States military personnel in retribution for perceived wrongs committed by the United States military in the Middle East, and to prevent additional troops from going to the Middle East. The specific object of the conspiracy was to kill officers and employees of the Department of Defense who worked at the Military Entrance Processing Station ("MEPS") located in the Federal Center South building at 4735 East Marginal Way, Seattle, Washington, and to kill other persons assisting such officers and employees in the performance of their duties, including the security personnel at the Federal Center South building.

    b.    The Department of Defense operates numerous MEPS throughout the United States. Applicants seeking to join one of the branches of the United States Military, including the Army, Navy, Air Force, and Marines, apply through and are processed at a MEPS. A MEPS is staffed by United States Military personnel and other federal civilian employees. The Federal Center South building is owned and operated by the United States Government, General Services Administration. In addition to the MEPS, this building houses a variety of other United States Government agencies and offices, as well as a child care center that is located immediately adjacent to the MEPS.

    c.    During early June 2011, while living in Los Angeles, California, Mujahidh engaged in several telephone conversations and exchanged numerous text messages with Abdul-Latif and a confidential source who was working with law enforcement. During these communications, Mujahidh expressed his desire to participate in the conspiracy and confirmed his commitment to the plan. For example, on June 6, 2011, Mujahidh spoke with Abdul-Latif over the telephone in the presence of the confidential source. They discussed the general nature of the conspiracy,

GOVERNMENT'S SENTENCING MEMORANDUM - 2
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

including the need to acquire firearms for use in the attack, and their plan to train with the firearms in advance of the attack. During this conversation, Mujahidh assured Abdul-Latif that he was committed to carrying out the attack. On June 9, 2011, Mujahidh sent a text message to the confidential source stating, "Allah grant us success in w[h]at we go forth to accomplish."

d. On June 14, 2011, Abdul-Latif spoke with Mujahidh over the telephone in the presence of the confidential source. They arranged for Mujahidh to travel via bus from Los Angeles to Seattle on June 20-21, 2011, for the purpose of training for and carrying out the attack on the MEPS. Thereafter, Mujahidh traveled to Seattle as planned, arriving during the afternoon of June 21, 2011.

e. During the late afternoon and evening on June 21, 2011, Mujahidh and Abdul-Latif met with the confidential source and further discussed the details of their planned attack on the MEPS, including that they intended to use machineguns and grenades during the attack. The confidential source agreed to acquire weapons for use during the attack, including firearms, magazines, ammunition, and grenades. During the meeting, Mujahidh stated, "Why don't we all just go into there [the MEPS] with guns blazing, and just lay everybody down. They're all *kaffirs* anyway. Just lay everybody down. And we all just make our way around here [the hallway] together. And whoever gets laid down, gets laid down." MUJAHIDH later described what he planned to do during the attack: "This is what I'm gonna do: I'm gonna post guard. I'm gonna come in, pop-pop the security guard. Run into the cafeteria, lay everybody down in there. Pop-pop-pop-pop. 'Get on the ground, get on the ground, get on the ground!' And these offices right here, pop-pop-pop-pop." Regarding the use of grenades during the attack, Mujahidh stated, "When you throw the grenade, you want to drop flat to the ground."

f. On June 22, 2011, Mujahidh and Abdul-Latif met with the confidential source to take possession of the machineguns that they intended to use during the attack. During the meeting, Mujahidh and Abdul-Latif handled and inspected the machineguns. Mujahidh practiced aiming and firing one of the machineguns, in both a standing and kneeling position. Moments later, Mujahidh and Abdul-Latif were arrested by FBI agents.

g. The firearms that Mujahidh and Abdul-Latif handled and inspected on June 22, 2011, consisted of a Colt M16A1, 5.56 mm caliber assault rifle, with serial number 9463259; a Colt M16A1, 5.56 mm caliber assault rifle, with serial number 9574856; and a Colt M16A1, 5.56 mm caliber assault rifle, with serial number 9396093. Each of these firearms was a "machinegun" as defined by federal law, and each was manufactured outside of Washington State, and therefore traveled to Washington in interstate or foreign commerce. A grenade is a "destructive device" and a "weapon of mass destruction" as defined by federal law.

h. Mujahidh had been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, Petty Theft with Prior Convictions, in Riverside County Superior Court, Case No. RIF104247, on or about October 16, 2002.

GOVERNMENT'S SENTENCING MEMORANDUM - 3
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1         i.    The parties agree that the Court is free to consider any and all additional facts contained in the Presentence Report and/or that may be presented by the United States or Defendant at the time of sentencing. The parties specifically agree that the Court should consider as true the facts contained in the Amended Complaint filed in case number MJ11-292, and that the Court should consider Defendant's post-arrest statements to law enforcement officers on June 22, 2011.

Plea Agreement ¶ 7.

The Plea Agreement was entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and contains an agreement that "the appropriate sentence to be imposed by the Court at the time of sentencing is . . . a sentence of imprisonment within the range of 27-32 years (324-384 months) [and] a term of supervised release for life." Plea Agreement ¶ 9. However, after co-defendant Abdul-Latif entered his guilty plea, the government agreed to modify the sentencing terms of Mujahidh's plea agreement to make them the same as those contained in Abdul-Latif's plea agreement. Specifically, the government has agreed to forego its opportunity to withdraw from the plea agreement as long as the Court imposes a sentence equal to or greater than 17 years; and the government will permit the defendant to withdraw from the plea agreement if the Court imposes a sentence of more than 19 years. The government has also agreed to allow the defendant to ask for any term of supervised release.

### III.    The Sentencing Guidelines Calculations.

The Presentence Report prepared by the Probation Office calculates the applicable Sentencing Guidelines as follows:

      Base offense level (§2A1.5):    33
      Official victims (§3A1.2(b)):    +6
      Crime of terrorism (§3A1.4(a)):    +12
      <u>Acceptance of responsibility</u>:    <u>-3</u>
      Total offense level:    48

The government has no objections to the Probation Office's Guidelines calculations. Although the defendant falls within criminal history category III using the standard Guidelines scoring rules, pursuant to the "Terrorism" enhancement found in

GOVERNMENT'S SENTENCING MEMORANDUM - 4
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

USSG § 3A1.4(b), the criminal history category must be raised to the maximum of VI. Under either criminal history category (III or VI), the advisory Sentencing Guidelines range in this case is "life."

## IV. Analysis of the § 3553(a) Sentencing Factors.

An analysis of the various sentencing factors found at Title 18, United States Code, Section 3553(a) supports the government's position that a sentence of 18 years of imprisonment, followed by a ten-year term of supervised release, is the most appropriate sentence for Mujahidh. The government will address the various operable sentencing factors in turn below.

### A. Nature and Circumstances of the Offense.

The offenses of conviction – Conspiracy to Murder Federal Officers and Officials, and Conspiracy to Use Weapons of Mass Destruction – are extremely serious. Mujahidh enthusiastically agreed to participate in an attack that was designed to kill – and certainly would have killed – scores of victims, including U.S. military officers and civilian employees, high-school age military recruits, and other likely victims. A close look at various aspects of the defendant's offense conduct supports a sentence of 18 years.

#### 1. Mujahidh's Terrorism Motivation.

As this Court recognized at the sentencing hearing for Abdul-Latif, the offenses of conviction are crimes of terrorism.[1] During many of the recorded conversations, Mujahidh and Abdul-Latif discussed the fact that they did not intend to carry out a random mass killing, but rather one designed to send a message by killing U.S. military employees and recruits in order to avenge what they perceived to be various atrocities committed by the U.S. military in the Middle East and other Islamic lands.

Mujahidh was well aware of the terrorism motivation of the attack plot that he agreed to carry out, even bragging once about the newspaper article he envisioned after

---

[1] *See* 18 U.S.C. § 2332b(g)(5)(A) ("[T]he term 'Federal crime of terrorism' means an offense that – is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct").

GOVERNMENT'S SENTENCING MEMORANDUM - 5
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

the attack: "Three Muslim males walk into MEPS building Seattle, Washington and gun down everybody. [All three participants] killed on site. Police stand-off and shootings." Ex. A at 1-3.[2]

Mujahidh's post-arrest statement was also full of comments about the political message he was trying to send by participating in the attack plot. The post-arrest interview was videotaped, and a DVD containing excerpts of the interview is provided to the Court as Exhibit B.[3] These excerpts, and other portions of the interview, make clear that Mujahidh fully understood the purpose of the attack, and stood behind its message. Mujahidh explained the purpose of the attack in the following ways:

- "Stop killing Muslims in Islamic countries . . . Afghanistan, Iraq, Lybia, Egypt. . . . You can't go on doing these types of things and not expect some repercussion, not expect something to happen. . . . You can't knock a glass over and not expect water to fall out of it. . ." (Exhibit B, excerpt 1)

- "You stop killing Muslims, you don't have to worry about a 'terrorist' as you call it, as you put it, on your American soil, from a Muslim believer, attacking your country, attacking your innocent men, your innocent women, your innocent children. It's like 'eye for an eye, tooth for a tooth.' You see what I'm saying? You pop my eye out, I'm gonna pop your eye out. You maim my finger, I'm gonna maim your finger. You bruise my heel, I'm gonna bruise your heel. That's what it is, man." (Exhibit B, excerpt 2)

- "That's where I'm at right now, man. You know? I don't want to kill innocent men, women and children. But, at the same time, you . . . defacing my religion, you maiming my religion, you making war . . ." (Exhibit B, excerpt 2)

- "My intended purpose was to die a martyr, to die a shaheed, to die for the sake of my religion, to wake up my religion. That maybe the other brothers and sisters will get out there and make a stand . . . Do something about this murdering and this killing in Islamic countries. And that was my intention . . . and to make a point that we can't just allow this country to continue with this madness and killing and maiming of Islamic countries. . ." (Exhibit B, excerpt 3)

- Explaining why the MEPS was chosen as a target: "I saw them as people who were going to go to Islamic countries and kill more Muslims. That's all I saw, that's it. I saw them as people who was gonna go to Iraq,

---

[2] The cited excerpts from the transcripts are collected in Exhibit A, which is marked with page numbers at the bottom of each page.

[3] The post-arrest interview lasted for a total of one hour and 47 minutes. The DVD filed as Exhibit B contains four excerpts from the interview, totaling approximately 15 minutes.

GOVERNMENT'S SENTENCING MEMORANDUM - 6
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

> Afghanistan, wherever there was a plan for war in an Islamic country or a war already continuing in an Islamic country. That's what I saw. . . . How was I gonna stop 'em? I was gonna pop 'em . . . with a gun."
> (Exhibit B, excerpt 4)

### 2. Mujahidh was Enthusiastic to Kill During the Attack.

To say that Mujahidh was enthusiastic to participate in the attack plot would be an understatement. During the planning sessions for the attack, Mujahidh made clear that he was eager to kill his intended victims, and as many as possible. He made numerous statements along these lines while he and Abdul-Latif planned out the play-by-play movements of the attackers using the map of the Federal Center South building. Indeed, Mujahidh's arrival in Seattle on June 21, 2011, served as the final catalyst for the attack plot, and his presence and enthusiasm appeared to strengthen even Abdul-Latif's resolve to carry out the attack. Some of Mujahidh's statements during the recordings that illustrate his enthusiasm for the attack include:

- "Why don't we all just go in there guns blazing and just lay everybody down. They all kaffirs, anyway. Just lay everybody down. . . . Whoever's getting laid down get laid down. . . . And these are – these is nonbelievers." Ex. A at 4-6.

- "You want me to post the door. I'm gonna – this is what I'm gonna do. I'm gonna post guard. I'm gonna come in. Pop-pop the security guards. Run into the cafeteria. Lay everybody down in there. Pop-pop-pop-pop. 'Get on the ground, get on the ground, get on the ground!' And these offices right here, pop-pop-pop-pop." Ex. A at 7-8.

- "Okay, I see what you saying. Okay, so I'll pop-pop the security guards. And come to the office, pop-pop-pop-pop. And then go to the cafeteria pop-pop-pop-pop. But since everybody's gonna be laid down right here, I could just – should be able to just post right here, keep back on you two brothers and post – watch the door and that right there." Ex. A at 7-8.

- "My thing is I want more of the action. It seems like y'all two getting all the action, man." Exhibit A at 9.

### 3. Mujahidh was Ready and Willing to Die During the Attack.

Mujahidh expected to die during the attack. Indeed, he wanted to die during the attack. His own statements make clear that he viewed himself as having nothing to live for, and that he saw martyrdom as his ultimate goal. In this sense, Mujahidh displayed the classic mind set of a "suicide bomber." Mujahidh made numerous statements

GOVERNMENT'S SENTENCING MEMORANDUM - 7
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

throughout the recordings illustrating his expectation of, and desire for, martyrdom during the attack:

- During a telephone conversation on June 6, 2011, Mujahidh was asked whether he was ready for "jannah," referring to martyrdom. He replied, "yeah." Abdul-Latif then emphasized, "'Cause if we're not, man, there's no point in even –" Mujahidh interrupted by stating, "Let me say it like this, man. *I don't have nothing to lose. I got everything to gain.*" Ex. A at 10-12 (emphasis added).

- On June 21, 2011, after his arrival in Seattle, Mujahidh spoke to the informant about the attack plan. The informant referred to the possibility of "survival." Mujahidh responded: "Not likely to occur. . . . We either gonna get killed or end up locked up. . . . I'm hoping for the first rather than the latter. . . . Yeah, rather die." Ex. A at 13-15.

- Later during the same conversation, Mujahidh reiterated, "We not walking out of there alive . . . Allah knows best. Well, my guess is we're not walking outta there." Ex. A 16-18.

- During a telephone conversation on June 17, 2011, Abdul-Latif commented that he was watching the show *Lockup* on MSNBC, and Mujahidh stated, "That's gonna be us, huh? We gonna be in lockup." Abdul-Latif replied, "We'll probably be in our grave, bro." Mujahidh answered, "Yeah. One or the other." Abdul-Latif stated: "Well, hope you're looking forward to it." Mujahidh confirmed, "Yeah, I am. Actually I am looking forward to it, man." Ex. A at 19-20.

- During a telephone call on June 14, 2011, Mujahidh's mother asked, "[H]ow long are you gonna be there . . . [i]n Washington?" He replied, "I'll probably be there for the rest of my life." Ex. A at 21-23.

- In a text message sent to the informant on June 12, 2011, Mujahidh stated: "Allah be with you and you die a shaheed and a martyr."

Mujahidh made similar comments during his post-arrest statement. He repeatedly stated that his intention was to die a "martyr" and a "shaheed" in the name of his radical political cause.

### 4. Mujahidh Rejected Multiple Opportunities to Withdraw From the Attack Plot.

Mujahidh further demonstrated his commitment to the attack plot by rejecting multiple opportunities that were provided for him to back out of the conspiracy. For example, the day before Mujahdih was arrested, the informant provided both Mujahidh and Abdul-Latif with an opportunity to withdraw from the conspiracy: "You know, if either of one – if either one of you brothers want to step out now, back away. It's okay.

GOVERNMENT'S SENTENCING MEMORANDUM - 8
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

I won't hold it against you, okay." But Mujahidh made his commitment clear: "I'm in, man . . . I'm in it, bro." Ex. A at 24-25. Mujahidh then vouched for Abdul-Latif's commitment to the attack by pointing out that he had converted his "hajj loot" to fund the purchase of machineguns. Ex. A at 24-26 ("He was going to make hajj. He gave you the hajj loot for this, man.").

Similarly, Mujahidh rejected an "out" provided to him by Abdul-Latif during a phone conversation on June 19, 2011, prior to Mujahidh's arrival in Seattle. After Mujahidh commented that he was "a little nervous" leaving the Los Angeles area where things were "going smooth" for him, Abdul-Latif stated: "You know, I mean, if you can get a better opportunity somewhere else, you should do it, man, you know. . . . I mean, you know, you could always change your mind if you wanted to, but –" Mujahidh replied, "Nah, I'm not gonna change my mind." Ex. A at 27-29.

### 5. The Would-Be Victims of the Attack Plot.

Mujahidh was very clear about who the intended victims of the attack plot were – the military officers and employees who worked at the MEPS, the high school age recruits who were present at the MEPS for processing, and the Federal Protective Services security guards who were working at the Federal Center South building. As set forth in greater detail in the government's sentencing memorandum regarding Abdul-Latif, the attack may have resulted in well over 200 deaths, including approximately 60 MEPS employees and contractors, 82 military recruits, and 20 family members of recruits. In addition, countless other federal employees would have been killed, specifically those who worked at the many other federal agencies and offices that are housed at the Federal Center South building. And, the planned attack likely would have resulted in the death of many children at the federal child care center located immediately adjacent to the MEPS. Although it was not Mujahidh's intent to kill children during the attack, that is likely what would have occurred while he was "laying everybody down."

//
//

GOVERNMENT'S SENTENCING MEMORANDUM - 9
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

B.  **History and Characteristics of the Defendant.**

   1.  **Mujahidh's Radical and Violent Ideology.**

As was the case with Abdul-Latif, Mujahidh had subscribed to a radical and violent ideology long before the events of this case began. Mujahidh's participation in the attack plot was inspired by these political views. Mujahidh has admittedly held these views since approximately 2006, when he was radicalized by viewing certain movies, videos, and other radical propaganda. *See* Young Report at 11; Koenen Report at 12. In addition, Mujahidh has admitted to aspiring to be a martyr for violent jihad since at least 2007 or 2008. *See* Young Report at 12. Mujahidh reaffirmed this information during his post-arrest statements.

   2.  **Evidence Concerning Mujahidh's Mental Health.**

Mujahidh has been evaluated by forensic psychologists and has been diagnosed with various mental health conditions. Although the government does not dispute any of the specific diagnoses that are proffered by the defense experts, we note that many of the specific claims made in the reports are inconsistent with the evidence in the case.

For example, Dr. Koenen opines that, "Mujahidh . . . did not completely understand many aspects of the plan, its full implications and was hesitant to participate." Koenen Report at 2. This is not consistent with the recordings or with Mujahidh's post-arrest statements, which make clear that he knew the purpose behind the attack and the planned method of attack, and was eager to participate. The defense expert reports also significantly overstate the extent to which Mujahidh allegedly wavered about his participation in the plot, and they incorrectly portray Abdul-Latif as being heavy-handed in terms of pressuring Mujahidh to participate. Instead, the evidence makes clear that Mujahidh was a willing and eager participant, and someone who rejected multiple opportunities to withdraw from the conspiracy. Indeed, the proof is in the pudding, with Mujahidh voluntarily traveling to Seattle from Los Angeles and ultimately taking possession of the machineguns.

GOVERNMENT'S SENTENCING MEMORANDUM - 10
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

But regardless of how the Court views the mental health evidence in this case, any weight that it should be given in terms of mitigating the sentence has already been accommodated by the terms of the plea agreement. The Sentencing Guidelines call for a "life" sentence. Mujahidh was charged with a count that carried a 30-year mandatory minimum sentence (Count 7 – Possession of Machineguns in Furtherance of a Crime of Violence), which will be dismissed by the government as part of the plea agreement. Plea Agreement ¶ 11. A sentence of 18 years is already substantially lower than the sentences the defendant would otherwise have faced. The mental health evidence in this case is not of a kind that justifies any further mitigation of the sentence. Moreover, although in one sense the mental health evidence may be viewed as somewhat mitigating, it actually cuts both ways. As will be discussed further below, this evidence is indicative of the danger that Mujahidh will pose to the community upon his release from prison.

### C. Need for the Sentence to Reflect the Seriousness of the Offense, to Provide Just Punishment, to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant.

A lengthy prison term is required in this case to reflect the extremely serious offenses of conviction, and to provide just punishment for these crimes. As far as inchoate crimes go, it is difficult to fathom more serious crimes than these.

The Court's sentence in this case should also be long enough to send a strong deterrent message to other individuals who share Mujahidh's radical views and who may consider acting on them. As the Court acknowledged at the sentencing hearing for Abdul-Latif, this case unfortunately does not stand alone. Over the past few years, there have been many similar cases across the United States in which similar plots have been carried out, attempted, and/or disrupted by the FBI and other law enforcement agencies. As was the case with Mujahdih and Abdul-Latif, these other defendants often were inspired by the radical rhetoric of Osama Bin Laden, Anwar al-Awlaki, and other terrorist figures. It is foreseeable that there will be others who attempt similar plots in the future. The Court should send a strong deterrent message – by imposing an 18-year prison term – in order to dissuade any future attack plots.

GOVERNMENT'S SENTENCING MEMORANDUM - 11
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

An 18-year term of imprisonment is also necessary to protect the public from future crimes by Mujahidh. There is every reason to believe that he will be a future danger to the community. Mujahidh agreed to participate in the attack plot in furtherance of his long-standing and deeply felt radical political beliefs. Based on the evidence in this case, including the defense mental health reports, the Court should expect Mujahidh to emerge from prison with the same radical and violent ideologies that led him to participate in the attack plot. The mental health evidence illustrates precisely why Mujahidh will likely be dangerous in the future. The descriptions provided of Mujahidh in the expert reports seem to match the typical profile of a "suicide bomber" – easily influenced by the propaganda of others, believing that he has nothing to live for, and seeking a way to make a meaningful impact through violence coupled with martyrdom. Even the defense experts recognize that, "Mr. Mujahidh does have several risk factors for dangerousness" in the future, and they point only to the aging process in terms of a reason to believe that the defendant will be less dangerous upon his release. On balance, an 18-year sentence would best protect the public from Mujahidh's potential future crimes. For the same reasons, the government urges the Court to impose a ten-year term of supervised release, to ensure that the Probation Office will have a mechanism in place to monitor Mujahidh's activities for a long period of time.

**D.    Need to Avoid Unwarranted Sentence Disparities.**

As was discussed in greater detail in the government's sentencing memorandum regarding Abdul-Latif, the sentences imposed by district courts in similar counter-terrorism "sting" cases have, as a general matter, fallen somewhere between 20 and 30 years. *See United States v. El-Khalifi*, 1:12-CR-37 (EDVA) (30 years); *United States v. Finton* 09-CR-30098 (SDIL) (28 years); *United States v. Martinez*, JFM-10-0798 (D. MD) (25 years); *United States v. Cromite* 09-558 (SDNY) (25 years); *United States v. Smadi* 3:09-CR-294 (NDTX) (24 years); *United States v. Farooque Ahmed* CR10-414 (EDVA) (23 years); *United States v. Amawi*, CR06-719 (20 years); *United States v. Ferdaus* CR11-10331 (D. MA) (17 years); *United States v. Douglas Wright* 1:12CR238

GOVERNMENT'S SENTENCING MEMORANDUM - 12
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

(NDOH) (11.5 years).  In a few instances, the lowest level defendants in these cases were sentenced to slightly less than 10 years.  When viewing the sentences imposed in these similar cases, a sentence of 18 years in the instant case is reasonable and appropriate.

Another relevant consideration for the Court to consider is the fact that Abdul-Latif has been sentenced to serve 18 years in prison.  The government acknowledges that there is some logic to the defense argument that Mujahidh should receive a slightly lower sentence than Abdul-Latif, in light of the fact that the attack plot was originally Abdul-Latif's idea and he recruited Mujahidh into the plot.  However, there are three reasons why this Court should impose the same 18-year sentence in Mujahidh's case.[4]

First, the seriousness of the offenses makes parsing relative culpability a meaningless endeavor.  Although Abdul-Latif hatched the plot, both he and Mujahidh were equally committed to executing the attack and killing a large number of innocent victims.  In comparing two defendants who had an equal willingness and desire to commit these heinous crimes, it has little bearing on their relative culpability which one came up with the idea first.  Had the attack been carried out, no one would attempt to compare the relative culpability of the defendants in its aftermath.

Second, for the reasons set forth above, Mujahidh is at least as likely to present a danger to the community upon his release from prison as is Abdul-Latif, and probably more so.  Unlike Abdul-Latif, who has a child and a wife, Mujahidh, in his own words, has "nothing to lose."  He will likely have little to return to upon his release from prison.  In addition, Mujahidh appears to have significantly more serious mental health issues than Abdul-Latif.  Between the two defendants, Mujahidh is the one as to whom the government has the greatest concern in terms of re-offending.

Third, given the lower and narrower effective sentencing range of 17-19 years, parsing the culpability of the two co-defendants is less necessary than it might have been

---

[4] Prior to Abdul-Latif's sentencing hearing, the government had intended to recommend a sentence of 19 years' imprisonment and a life term of supervised release for Mujahidh.  In light of the sentence imposed in Abdul-Latif's case, we have revised our sentencing recommendation.

GOVERNMENT'S SENTENCING MEMORANDUM - 13
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

had the Court sentenced the defendants within the original range of 27-32 years.

## V.   Conclusion.

For the reasons set forth above, the government respectfully requests that the Court sentence Mujahidh to a term of imprisonment of 18 years (216 months) and a term of supervised release for ten years.

DATED this 2nd day of April, 2013.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

  /s Todd Greenberg
TODD GREENBERG
MICHAEL DION
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-3903
Facsimile: 206-553-4440
Phone: 206-553-2636
E-mail: Todd.Greenberg4@usdoj.gov

GOVERNMENT'S SENTENCING MEMORANDUM - 14
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the defendant.

*s/Janet K. Vos*
JANET K. VOS
Paralegal Specialist
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-5041
FAX:   (206) 553-0755
E-mail: Janet.Vos@usdoj.gov

GOVERNMENT'S SENTENCING MEMORANDUM - 15
*United States v. Mujahidh*, No. CR11-228JLR

UNITED STATES ATTORNEY
700 Stewart Avenue, Suite 5220
Seattle, Washington 98101
(206) 553-7970